UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

BILL V. YPSILANTIS,
    Plaintiff,

vs.

JANET YELLEN, as Secretary,
U.S. Department of the Treasury,
Internal Revenue Service,
    Defendant.
_____/

## COMPLAINT

Plaintiff, Bill V. Ypsilantis, hereby files this Complaint against the Defendant, Janet Yellen, as Secretary, U.S. Department of the Treasury, Internal Revenue Service, and as grounds therefor, Plaintiff states as follows:

## I.
## INTRODUCTION

1. This is an action to halt and seek redress for the unlawful discrimination, perpetrated by the Defendant, against the Plaintiff, for the violation of the Rehabilitation Act of 1973, see 29 U.S.C. section 791. Under the Rehabilitation Act of 1973, executive agencies such as the Department of the Treasury, cannot deny qualified individuals, employment opportunities, or discriminate against them, because they are "qualified individuals, with disabilities."

2. This is also an action to halt and seek redress for the unlawful retaliation, perpetrated by the Defendant, against the Plaintiff, for seeking reprisal or retribution, based on the seeking of protected activity, by the Plaintiff, in violation of the Rehabilitation Act of 1973, see 29 U.S.C. section 791. Under the Rehabilitation Act of 1973, executive agencies such as the Department of the Treasury, cannot seek an adverse employment action, or discriminate against employees, because they are "qualified individuals, with disabilities," and because they have sought the protections of the Rehabilitation Act of 1973, and further the Rehabilitation Act of 1973, 29 U.S.C. Section 791(f), incorporates the ant-retaliation provision of the Americans with Disabilities Act, 42 U.S.C. Section 12203.

3. Despite repeated requests for various types of permissible leave, including, but not limited to, Weather and Safety Leave, and Plaintiff's notifications to management, that working from home was not a viable option; and that it exacerbates his medical conditions, and also causes further injury, management denied all of the Plaintiff's reasonable accommodation requests, which resulted in placing him in an Absent Without Leave ("AWOL") Status, depriving him of continued compensation and associated job benefits, for a period of eighteen (18) months.

4. Plaintiff seeks appropriate redress for the alleged statutory violations, including appropriate damages and a declaratory judgment, recognizing the illegality of Defendant's personnel practices, as applied to the Plaintiff.

## II.
## PARTIES

5. Plaintiff, Bill V. Ypsilantis, is a resident of Broward County, Florida, and at all material times herein, he was a "qualified individual with a disability," employed as a Revenue Agent, GS-13, for the Defendant, herein, the U.S. Department of the Treasury, Internal Revenue Service.

6. Defendant, Janet Yellen, as Secretary, U.S. Department of the Treasury, Internal Revenue Service, is the Agency head of the U.S. Department of the Treasury, and as such, she is responsible for the personnel policies of this Executive Agency, and further, the action herein, is brought against her in her official capacity.

## III.
## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. Section 1331; and in addition, the Plaintiff seeks declaratory relief in this action, pursuant to 28 U.S.C. Sections 2201 and 2202.

8. Venue is proper in this district, pursuant to 28 U.S.C. Section 1391, since a substantial part of the events or omissions giving rise to the pertinent claims, occurred in the Southern District of Florida.

9. On June 8, 2020, the Plaintiff timely sought the applicable Equal Employment Opportunity ("EEO") Counseling, and in addition, thereafter, on July 9, 2020, he filed a timely formal complaint of discrimination; the Plaintiff continued with the processing of his complaint

3

in the EEO administrative process, before an Administrative Judge, until July 11, 2022, when in response to the Plaintiff's written request, the Equal Employment Opportunity Commission ("EEOC") dismissed the further processing of the EEO complaint [*See*, the EEOC Order, stopping of the processing of the EEO Complaint, within the administrative process, attached hereto, as **EXHIBIT** A], and following the dismissal, the Plaintiff is allowed to continue with the adjudication of his EEO claims, in federal district court.

10. The imposition of AWOL status upon the Plaintiff, provided the impetus for his filing of the formal EEO Complaint, as well as management's request for the identities of those employees with compromised immune systems, as of March 16, 2020; Plaintiff is also a member of this class of employees.

11. This Court may assert jurisdiction over Secretary Yellen, as head of the U.S. Department of the Treasury, which is headquartered in Washington, D.C., since the Department's directives and policies impacted Plaintiff's employment relationship with the Defendant within the Southern District of Florida.

### III.
### FACUAL ALLEGATIONS

12. Plaintiff has multiple medical conditions, creating a neurological impairment, which forms the basis of his disabilities; and in turn, these disabilities impair his major life activities, in addition, consistent with these conditions, he has an impairment rating, as a service-connected disabled veteran.

4

13. Plaintiff has provided to management, specific information on his pertinent medical documentation, which identifies his work-related restrictions, he has also requested reasonable accommodations, which include the use of special safety equipment, designed to meet his ergonomic needs, as well as time off from work, to attend medical appointments.

14. Management has always been aware of the Plaintiff's disabilities, from the date of his initial hire in 2004, and he has been consistently consulting with a treating neurologist for a variety of conditions, including spinal cord surgery and his visits to a hand clinic, in the past, Plaintiff has availed himself of various forms of leave, which have been applicable to absences, following surgical procedures.

15. Management has also been aware that there is no end date for the Plaintiff's disabilities, the conditions are permanent and they will remain permanent, throughout his working life.

16. It is important to point out that the needed ergonomic equipment does not exist at Plaintiff's home, the needed specialized safety equipment can only be utilized in the work office environment.

17. There are no solutions which would enable Plaintiff to work from home, in short, any RA equipment cannot accomplish the intended objective of providing the Plaintiff with a reasonable accommodation in his home.

18. All reasonable accommodation equipment was initially approved in the Plaintiff's office environment in 2013, and the reasonable accommodation was completed in 2014, this accommodation was to be permanent, and continued performance of the essential functions

of Plaintiff's job were made possible through the granting of the reasonable accommodation.

19. Various office related tasks which are required to be performed by a Revenue Agent, can be accomplished through the Reasonable Accommodation ("RA"), which was previously provided by management to the Plaintiff, specifically certain equipment which can be used in the office setting

20. The requested accommodations were authorized and communicated to management by the Plaintiff's treating health care professionals.

21. Prior to the implementation of the Evacuation Order, the Defendant Agency attempted to compel the Plaintiff to Telework, even though he was not a signatory to a Telework Agreement, however, Plaintiff is unable to work from home, since the RA cannot be properly implemented at home.

22. On March 27, 2020, Plaintiff received an email notification from management, directing him to work from home, based on an Evacuation Order, which was issued as of March 30, 2020, due to the onset of the COVID-19 pandemic.

23. Unfortunately, based on his disabilities, Plaintiff cannot be accommodated at home, through the use of special accommodation and or safety equipment.

24. On April 9, 2020, Plaintiff notified management of his inability to work at home; he also informed management of the injury, which he sustained at home, during the period when he was compelled to work at home, from March 30, 2020 to April 9, 2020.

25. Based on the Plaintiff's inability to work at home, due to his disabilities, he requested Weather and Safety Leave, which was denied, and then, the Plaintiff began to exhaust all of his available annual, sick and other forms of available leave.

26. On April 21, 2020, the Plaintiff once again requested Weather and Safety Leave, which was again denied, and then, he requested advanced sick leave.

27. On May 1, 2020, Plaintiff was denied eighty hours of advanced sick leave, as well as Weather and Safety Leave, even though he had provided the additional medical documentation.

28. On May 4, 2020, the Plaintiff responded to the May 1, 2020 denial of leave position taken by management, he then requested advanced leave in excess of the 80 hours of advanced leave.

29. On May 5, 2020, the Group Manager informed Plaintiff that he would not be allowed to take Leave Without Pay ("LWOP") and that, without explanation, Plaintiff would be charged with an extended Absence Without Leave. ("AWOL").

30. On May 6, 2020, the Plaintiff requested advanced annual leave for certain family medical leave, as well as advanced leave of any kind for his own medical needs, and if this leave was to be denied, Plaintiff requested LWOP, pursuant to a Family Medical Leave Act ("FMLA") request; advanced leave under the FMLA was denied, but the FMLA Request under LWOP was approved.

31. On May 8, 2020, management notified the Plaintiff of its denial of his reasonable accommodation request, namely allowing safety equipment to be brought to his home, this

denial was made without justification, however, management did not comment on the unavailability of any office workspace.

32. On June 9, 2020, management notified Plaintiff of a directive to return to work, at his telework location, effective June 11, 2020, although Plaintiff in fact had no telework agreement.

33. Plaintiff had been placed on FMLA-LWOP from May 6, 2020 through June 10, 2020, and he has been charged with AWOL since June 11, 2020; Plaintiff was denied all previous requests for leave and he was denied the taking of LWOP, instead he was designated as being on AWOL.

34. The repeated denials of the Plaintiff's requests for leave and or reasonable accommodations, were ultimately denied by the Defendant's Area Director, Julie Forester.

35. The denial of advanced sick leave as well as the other forms of leave, has effectively removed Plaintiff from an on-going pay status, and caused him to experience substantial financial harm.

36. On June 8, 2020, Plaintiff received a manager's directive, specifically from Rafael Tinoco, Group Manager/Supervisory Revenue Agent, informing him that he could not use LWOP for his absences, and that he would be charged with AWOL.

37. The denial of LWOP by management and the placement of the Plaintiff on AWOL status, continued unabated, without any factual or legal justification, for a period of eighteen months.

38. At no time was the Plaintiff provided with an offer to work in the office, he was merely directed to telework, without any applicable telework agreement, and or without any reasonable accommodation equipment; and the Defendant employer failed to take into consideration that working from home, without specialized safety equipment resulted in the aggravation of his disabilities.

39. Moreover, the Defendant employer, acting through its agents and or representatives, failed to engage in a dialogue with the Plaintiff, or an "interactive process," to determine the nature and extent of his disabilities and his restrictions, in an effort to craft a reasonable solution which could have complied with management's efficiency needs, as sell as the Plaintiff's limitations, due to his disabilities.

40. The Defendant employer's failure to engage in a constructive dialogue, with the Plaintiff, or in an "interactive process," constitutes a *per se* substantive violation of the Rehabilitation Act of 1973.

41. The Defendant's failure to engage in an interactive process, with the Plaintiff, establishes liability, as against the Defendant employer, pursuant to the substantive statutory protections of the Rehabilitation Act of 1973.

## COUNT I
## (VIOLATION OF THE REHABILITATION ACT)

42. Plaintiff restates and reavers the allegations contained in Paragraphs 1—41 of the Complaint, as if fully set forth herein.

43. Plaintiff is a, "qualified individual with a disability," under the Rehabilitation Act of 1973; and his disabilities impair major life activities.

44. Plaintiff was qualified to perform his job functions as a Revenue Agent, GS-13, and he could perform the essential functions of his position with a reasonable accommodation.

45. In accordance with his work restrictions, Plaintiff requested reasonable accommodations, which would not have imposed an undue hardship on the Defendant employer.

46. The Defendant denied the requested reasonable accommodations, which resulted in the Plaintiff being placed in an AWOL status, for a period of eighteen months, and during this period, he lost his base compensation, as a federal employee, as well as numerous job benefits associated with his position as a Revenue Agent, GS-13, for the Defendant employer.

47. The Defendant articulated no bona fide reasons, for the rejection of the Plaintiff's reasonable accommodation requests, including permitting him to work in the office, with specialized safety and or ergonomic equipment.

48. The repeated denials of the requested reasonable accommodations, without any legal or factual justification constitutes nothing less than continuous and on-going harassment of the Plaintiff, based on his disabilities.

49. By failing to provide the requested reasonable accommodations, the Defendant employer has discriminated against the Plaintiff on the basis of his disabilities, in violation of the Rehabilitation Act of 1973.

50. As a result of the Defendant employer's unlawful actions, Plaintiff has suffered both pecuniary and non-pecuniary harm.

51. In order to enforce his right and his legal protections under the Rehabilitation Act of 1973, Plaintiff had retained undersigned counsel and as a result thereof, Plaintiff has incurred attorney's fees and costs.

**WHEREFORE**, Plaintiff, Bill V. Ypsilantis, respectfully requests that the Court enter judgment in his favor, against the Defendant, Janet Yellen, as Secretary of the U.S. Treasury Department, Internal Revenue Service, and order the following substantive relief:

A) Declare that the Defendant's actions in this case, with regard to the imposition of its personnel practices, against the Plaintiff, violated the substantive terms of the Rehabilitation Act of 1973, and enjoin the Defendant from taking any further such actions;

B) Award the Plaintiff pecuniary damages, including back pay, front pay and the restoration of any and all job benefits, associated with his prior employment with the Defendant;

C) Award the Plaintiff compensatory damages as compensation for emotional pain and suffering, resulting from the Defendant's unlawful conduct; and

D) Award any and all further relief, which the Court deems to be just, proper and equitable.

## COUNT II
## (VIOLATION OF THE REHABILITATION ACT, RETALIATION)

52. Plaintiff restates and reavers the allegations contained in Paragraphs 1—41 of the Complaint, as if fully set forth herein.

53. Section 504 of the Rehabilitation Act of 1973 prohibits the taking of an adverse personnel action, or the imposition of retaliation, or reprisal, against persons with disabilities, and retaliation further is prohibited under the statute for disabled persons, who assert their substantive rights under the statute.

54. Plaintiff is a "qualified individual with a disability," subject to the protection of the Rehabilitation Act of 1973.

55. On April 9, 2020, Plaintiff notified management of his inability to work at home, due to his disabilities; he also informed management of the injury, which he sustained at home, during the period, when he was compelled to work at home, from March 30, 2020 to April 9, 2020.

56. Despite engaging in this protected activity, claiming that his disabilities preclude him from working at home, the Defendant continuously denied Plaintiff's requests for a reasonable accommodation, and further, as a direct result of Plaintiff's assertion of his protected status, as a qualified individual with a disability, the Defendant proceeded to place the Plaintiff in an "AWOL" status, for a period of eighteen months, which resulted in a loss of regular salary during that period, as well as the loss of associated job benefits.

57. There was a causal connection between the Plaintiff's protected activity, his repeated requests, for a reasonable accommodations; and the subsequent adverse action, the repeated denials of the accommodations, and most significantly, the imposition of an adverse action, the placing of the Plaintiff in an AWOL status, for an extended period of time.

58. The repeated denials of the Plaintiff's *bona fide* requests for a reasonable accommodation, without justification, and his placement in an AWOL status, constituted repeated reprisals against the Plaintiff, in direct response and in opposition to his protected workplace activity.

59. As a result of the Defendant employer's actions, Plaintiff has suffered both pecuniary and non-pecuniary harm.

60. In order to enforce his rights and his legal protections under the Rehabilitation Act of 1973, Plaintiff had retained undersigned counsel and as a result thereof, Plaintiff has incurred attorney's fees and costs.

**WHEREFORE**, Plaintiff, Bill V. Ypsilantis, respectfully requests that the Court enter judgment in his favor, against the Defendant, Janet Yellen, as Secretary of the U.S. Treasury Department, Internal Revenue Service, and order the following substantive relief:

   A) Declare that the Defendant's actions in this case, with regard to the imposition of its personnel practices, against the Plaintiff, violated the substantive terms of the Rehabilitation Act of 1973, and enjoin the Defendant from taking any further such actions;

B) Award the Plaintiff pecuniary damages, including back pay, front pay and the restoration of any and all job benefits, associated with his prior employment with the Defendant;

C) Award the Plaintiff compensatory damages as compensation for emotional pain and suffering, resulting from the Defendant's unlawful conduct; and

D) Award any and all further relief, which the Court deems to be just, proper and equitable.

### Demand for Trial by Jury

Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
Mark J. Berkowitz

Dated on this 12th day of August, 2022.