UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-61514-BLOOM/Valle

BILL V. YPSILANTIS,

      Plaintiff,

v.

JANET YELLEN, as Secretary,
U.S. Department of the Treasury,
Internal Revenue Service,

      Defendant.

_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Bill V. Ypsilantis' ("Plaintiff" or "Ypsilantis") Motion for Summary Judgment, ECF No. [41] ("Plaintiff's Motion") and Defendant Janet Yellen, U.S. Department of the Treasury, Internal Revenue Service's ("Defendant" or "IRS") Motion for Summary Judgment, ECF No. [44] ("Defendant's Motion"). Defendant filed a Response in Opposition to Plaintiff's Motion, ECF No. [57] ("Defendant's Response"), to which Plaintiff filed a Reply,[1] ECF No. [61] ("Plaintiff's Reply"). Plaintiff filed a Response in Opposition to Defendant's Motion,[2] ECF No. [53] ("Plaintiff's Response"), to which Defendant filed a Reply, ECF No. [59] ("Defendant's Reply"). The Court has reviewed the Motions, all supporting and opposing submissions,[3] the record in this case, the applicable law, and is otherwise fully advised.

---

[1] Plaintiff filed an initial Reply, ECF No. [60], and subsequently filed an Amended Reply, ECF No. [61], without seeking leave from the Court to do so. The Court will nonetheless consider Plaintiff's Amended Reply as the operative filing.

[2] The Court granted Plaintiff's Motions to Strike Plaintiff's initial Statement of Material Facts in Support of its Motion and Plaintiff's Response in Opposition to Defendant's Motion. ECF Nos. [48], [55].

[3] Plaintiff filed a Statement of Material Facts ("PSMF") in support of its Motion, ECF No. [46]. Defendant filed a Response in Opposition to Plaintiff's Statement of Material Facts ("OPSMF"), ECF No. [58]. Defendant filed a Statement of Material Facts ("DSMF") with its Motion, ECF No. [45]. Plaintiff filed

For the reasons set forth below, Defendant's Motion is granted in part and Plaintiff's Motion is denied.

## I. BACKGROUND

On August 12, 2022, Plaintiff Ypsilantis filed his Complaint, alleging discrimination on the basis of disability and unlawful retaliation in violation of the Rehabilitation Act by his employer, Defendant Internal Revenue Service. *See generally* ECF No. [1]. Plaintiff thereafter filed an Amended Complaint, ECF No. [11], alleging three claims against Defendant: Disability Discrimination in Violation of the Rehabilitation Act (Count I); Retaliation in Violation of the Rehabilitation Act (Count II); and Harassment or Hostile Work Environment in Violation of the Rehabilitation Act (Count III).

Plaintiff's Motion asserts that the undisputed material facts establish that Defendant discriminated against Plaintiff by failing to reasonably accommodate his disability, and subsequently harassed and retaliated against Plaintiff for his continued attempts to obtain a reasonable accommodation. Plaintiff contends that his supervisor's recognition of his status as a disabled individual, acknowledgment that Plaintiff made a reasonable accommodation request, and subsequent failure to sufficiently engage in an interactive accommodation process with Plaintiff entitles him to judgment as a matter of law. Plaintiff contends that Defendant's rescission of imposed adverse employment actions does not shield it from liability. Defendant responds that Plaintiff is not entitled to summary judgment because Plaintiff fails to make out a *prima facie* case of discrimination or retaliation under the Rehabilitation Act.

Defendant's Motion asserts that the undisputed material facts establish that Plaintiff fails to make out a *prima facie* case of discrimination or retaliation under the Rehabilitation Act, and

---

a Statement of Material Facts in Opposition to Defendant's Statement of Material Facts ("ODSMF"), ECF No. [52].

Defendant is entitled to summary judgment.[4] Defendant contends that Plaintiff failed to make a specific accommodation request, and even if the Court disagrees, none of Plaintiff's accommodation requests were reasonable. Defendant argues that this shortcoming is fatal to Plaintiff's discrimination and retaliation claims. Alternatively, Defendant also argues that Plaintiff's retaliation claim fails because Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reasons for subjecting Plaintiff to adverse employment actions as pretextual. Plaintiff responds that the undisputed material facts establish that Defendant violated the Rehabilitation Act by discriminating against Plaintiff based on his disability, and by harassing and retaliating against Plaintiff.

### A. MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Plaintiff has been employed by Defendant as an Internal Revenue Service Agent since 2004. PSMF ¶¶ 1-2; OPSMF ¶¶ 1-2. Plaintiff was in this role during the period in controversy, which runs from March 2020 to December 7, 2021. PSMF ¶ 1; OPSMF ¶ 1. At all times during his employment at the IRS, Plaintiff has been classified as a 90% disabled veteran. PSMF ¶ 2; OPSMF ¶ 2. Plaintiff specifically suffers from the following medical conditions: (1) multiple sclerosis; (2) radiculopathy; (3) a spinal fusion; (4) a herniated disc; (5) migraine headaches; (6) tinnitus; (7) carpal tunnel syndrome; (8) an ulnar nerve compression condition; and (9) sleep apnea. PSMF ¶ 2; OPSMF ¶ 2. All relevant decisionmakers acknowledged Plaintiff's status as a disabled individual. PSMF ¶ 3; OPSMF ¶ 3.

---

[4] Defendant's Motion does not address Plaintiff's hostile work environment claim (Count III). *See generally* Defendant's Motion.

The IRS' Manual Transmittal includes the following policies on providing reasonable accommodations for individuals with disabilities:

> (21)    **Reasonable Accommodation (RA)** – A change or adjustment that enables a qualified person with a disability to apply for a job, perform job duties, or enjoy benefits and privileges or employment. There are three categories of reasonable accommodations:
>
> a.    modifications or adjustments to a job application process to permit an individual with a disability to be considered for a job (such as, providing application forms in alternative formats like large print or Braille);
> b.    modifications or adjustments to enable a qualified individual with a disability to perform the essential functions of the job (such as, providing sign language interpreters); and
> c.    modifications or adjustments that enable employees with disabilities to enjoy equal benefits and privileges of employment (such as, removing physical barriers in an organization's cafeteria).
>
> (25)    **Request for Reasonable Accommodation** – A statement that an individual needs an adjustment or change at work, in the application process, or in a benefit or privilege of employment for a reason related to a medical condition. A reasonable accommodation request made be submitted orally or in writing, by the employee or applicant or by someone associated with the employee or applicant.

ECF No. [46-6] at 10.

In 2014, Plaintiff requested a disability accommodation, which Defendant granted ("2014 Reasonable Accommodation"). DSMF ¶ 1; PSMF ¶. The accommodation consisted of special office equipment, specifically a handshoe mouse, an ergonomic keyboard, an M22 amplifier, a headset, a mousepad, a document holder, a footrest, and an ergonomic chair.[5] DSMF ¶ 1; PSMF ¶ 1.

On March 26, 2020, an unnamed IRS Human Capital Officer emailed all IRS employees located in the St. Petersburg, Tallahassee, Maitland, Plantation, and Royal Palm – Plantation,

---

[5] Defendant also granted Plaintiff a reasonable accommodation in February 2022. *See* ECF No. [45-3] at 3.

Florida posts of duty informing employees that those posts of duty were closed effective March 27, 2020 due to the COVID-19 pandemic. ECF No. [45-4] at 1.[6] The email also stated that telework-eligible employees were expected to begin teleworking on March 27, 2020 due to the closure of the posts of duty. *Id.* at 1-2. On March 27, 2020, the IRS Human Capital Office sent another email to all IRS employees stating that due to the COVID-19 pandemic, all employees who had portable work were directed to telework as of March 30, 2020. ECF No. [45-5] at 1. The directive applied to all employees with portable work, including those who were not teleworking prior to that date and employees who did not have an active telework agreement. *Id.* The email also stated that beginning on March 30, 2020, IRS building access would be restricted to picking up work assignments, mail, supplies, or for those who were performing duties that could only be performed on site. *Id.*

On April 9, 2020, Plaintiff emailed his direct supervisor, Group Manager Rafael Tinoco ("Tinoco"), and informed him that Plaintiff could not continue to telework. Plaintiff provided the following reasons for his inability to telework:

1. I have a long and detailed history of not working from home (going back as far as the day I started with the IRS on 8/9/2004), even when I previously had active Telework Agreements (I have not had a Telework Agreement for over 2 years now)[.]
2. I do not have space in my home that can be set up and arranged to be conducive to working from home.
3. All spaces in my home are shared with my spouse and children (which homeschool and require space to do their schoolwork), and also make any work and social distancing impossible.
4. I cannot and do not wish to be held liable for equipment and case documents I have been ordered to take home (as I do not have a Telework Agreement), especially since I have confirmed that I do not have anywhere to safely secure said items[.]
5. My previously noted Immune System Compromised position and the possible effects telework may have on this (especially given that I do not have a telework agreement).

---

[6] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

6. My other Medical issues (specifically requiring previously approved Reasonable Accommodations) necessitating special equipment (Chair, Keyboard, mouse, etc.), arrangement (a desk that can be ergonomically organized), access (larger attached screens), and that my back, neck and eyes have all started to hurt since working at home.

ECF No. 45-6 at 1-2. Plaintiff also made the following leave requests:

1. If the Post of Duty is closed (as per the Evacuation Order and given the requirement to Telework) to me I am requesting Administrative Leave starting from tomorrow 4/10/2020 and continuing until the Post of Duty is open and available for me to work at.
2. If the Post of Duty is open (per the Evacuation Order and given the requirement to Telework), but closed to me for working, I am requesting Weather & Safety Leave starting from tomorrow 4/10/2020 and continuing until the Post of Duty is open and available for me to work at.

*Id.* at 3. Plaintiff further requested that, should the above leave requests be denied, he be placed on leave based on his remaining balances of annual leave, sick leave, and leave for credited time worked. Plaintiff also noted his desire to discuss additional leave options, such as leave without pay, when those balances run out. *Id.* at 3-4.

On April 10, 2020, Mr. Tinoco responded to Plaintiff's email. Tinoco informed Plaintiff that he was denying Plaintiff's request for Weather & Safety Leave. ECF No. [45-7] at 1. Tinoco explained that, per the IRS Human Capital Office directive, Plaintiff is mandated to telework, and Plaintiff's requests fail to qualify for Weather & Safety Leave or administrative leave.[7] *Id.* Tinoco noted that the special equipment Plaintiff received pursuant to his 2014 Reasonable Accommodation could be taken home to allow Plaintiff to telework. *Id.* at 2. Tinoco also approved Plaintiff's request to exhaust his remaining balances of annual leave, sick leave, and leave for

---

[7] The IRS's "COVID-19 teleworking with a Reasonable Accommodation" frequently asked questions webpage provides that "[i]f you have a reasonable accommodation and you cannot be accommodated at home, you may be eligible for Weather and Safety leave." ECF No. [46-4] at 2.

credited time worked.[8] *Id.* Plaintiff responded later that day acknowledging receipt of Tinoco's email and noting his disagreement with the decision to deny Weather & Safety Leave. *Id.* at 1.

Plaintiff sent another email to Tinoco on April 21, 2020, copying Territory Manager Donald Maclennan ("Maclennan"). Therein, Plaintiff explained:

1. I do not have a Reasonable Accommodation (2014-293, approved in 2013, I sent you the relevant emails) and this includes equipment (Chair, Keyboard, Mouse, Footrest) and the related ergonomic setup (they sent me documents and I did the setup myself which includes the cubicle desk which has movable features for ergonomic changes and setup)
2. I have Multiple Sclerosis and take related medication and this is an Immune System Compromised condition per CDC and other guidelines
3. I have had Spinal Fusion Surgery (previous approved Advanced Sick Leave for recovering from this surgery in 2014)
4. I have had surgery (2016 and 2017) on both wrists for Carpal Tunnel Syndrome

ECF No. 45-8 at 1. Plaintiff also noted that he was in contact with his doctors to provide a letter addressing his needs for a workspace and provided excerpts from COVID-19 frequently-asked-questions regarding various forms of leave. *Id.* at 2-5. Plaintiff reiterated his request for either Weather & Safety Leave or administrative leave. *Id.* at 3. Alternatively, Plaintiff requested the maximum advance sick leave available. *Id.*

Plaintiff followed up on this request in a May 1, 2020 email to Tinoco. ECF No. [45-9]. Therein, Plaintiff reiterated his bases for requesting either Weather & Safety Leave or other administrative leave and requested the following:

1. Weather & Safety Leave until such time as the office is open (for me to go in, even with restrictions) again
2. If this request is denied again, then I wish to have my Advanced Sick Leave (currently authorized for up to 80 hours) approved for the full 240 hours (for the medical reasons stated above, on the attached medical letter and the emails below)

---

[8] Tinoco also informed Plaintiff that after this leave was exhausted, Plaintiff "can opt for LWOP [Leave With Out Pay]." *Id.*

*Id.* at 2. Plaintiff further requested that his leave balances be restored to their prior balances if those requests were granted. *Id.* Plaintiff attached a letter dated April 27, 2020 from Department of Veteran Affairs physician Dr. Douglas Wallace ("VA Letter"). ECF No. [45-10]. In the VA Letter, Dr. Wallace confirmed that Plaintiff suffers from multiple sclerosis, multiple spine issues, severe carpal tunnel syndrome, sleep apnea, and that Plaintiff is immunocompromised. *Id.* Dr. Wallace recommended that "[d]ue to the COVID-19 National Crisis and because of his current medical conditions, and immunocompromised system secondary to the use of DMT therapy, it is advised that the Veteran stays under preventative care at home in an isolated environment." *Id.* Dr. Wallace further recommended the following:

> The requirements of his specialized equipment and ergonomics accommodations restricts his ability to perform certain working conditions. Special equipment (ergonomically manipulative desk, chair, etc.) is needed to be able to perform work on a continuous basis. Restrictions need to be adhere[d] to carrying heavier items, working under restrictive conditions that can affect his Uhtoff's sensitivity due to his Multiple Sclerosis.

*Id.*

Tinoco responded to Plaintiff on May 1, 2020, copying Maclennan. ECF No. [45-9]. Tinoco informed Plaintiff that the following decisions had been made regarding his requests for advanced leave:

1. Advanced leave will not be approved beyond the 80 hours already given.
2. You are expected to telework on May 5th when your leave expired.
3. I will deliver the equipment for your reasonable accommodation which includes Hand Shoe mouse, ergo keyboard, M22 AMP, Headset Mouse pad, document holder, footrest and ergonomic chair.
4. If you need additional work I can assign work electronically.

*Id.* at 1. Tinoco also noted that, in addition to delivering this equipment, "we will continue the reasonable accommodation interactive process by assisting in the delivery of an ergonomic desktop, if medically required at your telework location[]" and requested more information on what Plaintiff required for the desktop. *Id.* at 1.

On May 6, 2020, Plaintiff emailed Tinoco to request advance annual leave to care for a family member suffering from an undisclosed medical condition. ECF No. [45-15]. Alternatively, Plaintiff invoked entitlement to leave under the Family Medical Care Leave Act ("FMLA"). *Id.* Tinoco responded, advising Plaintiff to fill out the relevant FMLA paperwork and return it to Tinoco. ECF No. [45-16]. Tinoco advised Plaintiff that his request for leave without pay ("LWOP") would be approved while traveling due to his family member's medical condition and noted that he would initiate the FMLA leave process.

On May 8, 2020, Tinoco emailed Plaintiff, copying Maclennan, and noting that "this email serves as confirmation that you declined receipt of the reasonable accommodation equipment" on May 6, 2020. ECF No. [45-14]. Tinoco informed Plaintiff that the equipment would be delivered when Plaintiff returned from leave, Defendant was in the process of ordering an ergonomic desk for Plaintiff, and Plaintiff's request for FMLA leave "was forwarded to FOH [Federal Occupational Health] for review and recommendation." *Id.*

On May 8, 2020, Plaintiff's FMLA request was approved by FOH. ECF No. [45-17]. FOH determined that Plaintiff's son suffered from a serious medical condition, and provisionally approved up to 20 hours of FMLA leave for Plaintiff between May 13, 2020 and June 30, 2020 on that basis.[9] *Id.*

On June 8, 2020, Plaintiff emailed Tinoco to explain that he requested additional FMLA leave. ECF No. [45-18] at 1. Plaintiff also informed Tinoco that he required an ergonomic desk and his previously approved equipment, but explained that "as stated numerous times before, these items can be brought to my house, but I do not have any space available to place these items … without impeding my family's normal daily activities and causing undue hardship[.]" *Id.* at 2.

---

[9] FOH also determined that Plaintiff was limited to taking no more than 4 hours of FMLA leave per week during that period. *Id.*

Case No. 22-cv-61514-BLOOM/Valle

Plaintiff also noted that he did not intend to return to work on June 8, 2020 due to his FMLA leave. *Id.*

On June 9, 2020, Tinoco emailed Plaintiff to memorialize a phone call they had the pervious afternoon, copying Maclennan. ECF No. [45-19]. Tinoco informed Plaintiff that no FMLA leave beyond the 20 total hours recommended by FOH would be approved, Plaintiff will be on LWOP from June 8, 2020, to June 10, 2020, and Tinoco will deliver Plaintiff's "reasonable accommodation equipment" on June 10, 2020. *Id.* Tinoco also informed Plaintiff that he must report back to work on June 11, 2020, and that "[f]ailure to report to work will lead to AWOL [Absence With Out Leave] charges and failure to follow managements directive." *Id.*

The FOH approved Plaintiff for additional FMLA leave on June 9, 2020. ECF No. [45-20]. FOH again cited Plaintiff's need to care for his son as the basis for FMLA leave and approved no more than 272 hours of total FMLA leave between May 13, 2020 and June 30, 2020. *Id.*

On June 10, 2020, Plaintiff emailed Tinoco and Maclennan to inform them that he "cannot accept delivery of the Reasonable accommodation items or the future delivery of an Ergonomic desk[,]" and Plaintiff "cannot report for work (Telework) tomorrow." ECF No. [45-21]. Plaintiff requested Weather & Safety Leave, advanced sick leave, LWOP, or FMLA leave. *Id.*

On June 17, 2020, Tinoco emailed Plaintiff to inform him that he was approved for up to 4 hours of FMLA leave pursuant to FOH's May 8, 2020 determination, but his additional leave requests were denied.[10] ECF No. [45-22] at 6. The email noted Plaintiff's refusal to accept delivery of "existing reasonable accommodation equipment," and Plaintiff was charged with "AWOL effective 6/11/2020 until such time as you return to telework." *Id.* Tinoco also noted that Plaintiff's

---

[10] Tinoco had not yet received FOH's June 10, 2020 decision granting Plaintiff additional FMLA leave. *See* ECF No. [45-24] at 2.

AWOL status "can lead to disciplinary actions up to and including removal." *Id.* Plaintiff responded later that day to note his disagreements with this decision. *Id.* at 1-5.

On July 20, 2020, Plaintiff emailed Tinoco, copying Reasonable Accommodation Coordinator Damaris Ouellette. Plaintiff explained that Tinoco informed him during a July 17, 2020 phone call "that a Reasonable Accommodation Request was made for an ergonomic desk … to be ordered and delivered to my home." ECF No. [45-23]. Plaintiff explained the following regarding this request:

1. I did not make such a request (I assume management did this)
2. I do not have a Telework Agreement
3. I do not have any workspace in my home to place any type of ergonomic desk
4. I do not have any workspace to place the ergonomic chair (in the office from a 2014 Reasonable Accommodation) or any of the other adaptive technology items (in the office from a 2014 Reasonable Accommodation)
5. I cannot accept delivery of any Reasonable Accommodation desk item

*Id.* On August 5, 2020, Tinoco sent Plaintiff a letter documenting their prior communications. ECF No. [45-24]. The letter noted that FOH's determination that Plaintiff was entitled to a total of 272 hours of FMLA leave was received on July 29, 2020. *Id.* at 2. The letter explained that the FMLA leave was retroactively applied to that period, but that the FMLA leave expired on June 29, 2020. *Id.* at 2. Tinoco's letter also denied Plaintiff's renewed leave requests, re-directed Plaintiff to telework no later than August 10, 2020, and noted that Plaintiff had been charged as AWOL from June 30, 2022 through August 5, 2020. *Id.* at 3.

On September 14, 2020, Maclennan sent Plaintiff a Letter of Admonishment noting that, to date, Plaintiff was charged with 392 hours of AWOL from June 30, 2020 to September 4, 2020 and noted that "[f]uture discipline could be severe." ECF No. [45-25] ("Letter of Admonishment").

Plaintiff responded on September 17, 2020, noting his disagreement with the Letter of Admonishment's findings. ECF No. [45-26]. Plaintiff advised that the Letter of Admonishment

omitted "mention of my valid requests for Weather & Safety Leave (both for my Immune System Compromised status and for not have the workspace at home and my Reasonable Accommodations)[,]" and no mention of "the Medical letters provided, both the one provided with the approved Reasonable Accommodation in 2014 and the Medical Letter provided on May 1, 2020 with the request for Advanced sick Leave." *Id.* at 2.

On December 16, 2020, Tinoco sent a letter to Plaintiff informing him that his post of duty remained closed and noting that Plaintiff has been in AWOL status from June 30, 2020 to December 16, 2020. ECF No. [45-27] at 1.

On February 18, 2021, Maclennan sent Plaintiff a letter informing him that "it is proposed to suspend you from duty and pay for a period of fourteen (14) calendar days[.]" ECF No. [45-28] at 1. The letter also noted that Plaintiff remained AWOL. *Id.* at 1-10. Tinoco sent Plaintiff another letter on May 10, 2021 advising Plaintiff that he has "been carried in an Absence Without Leave (AWOL) status since June 30, 2020." ECF No. [45-29] at 1.

On June 17, 2021, Maclennan sent Plaintiff a letter informing him that "it is proposed to remove [Plaintiff] from the Service[.]" ECF No. [45-30] at 1 ("Proposal of Removal"). The Proposal of Removal reiterated that Plaintiff remained AWOL and refused prior directives to telework. *See generally id.*

On December 7, 2021, Plaintiff received two letters: one rescinding the Proposal of Removal, and the other directing Plaintiff to return to work at his post of duty on December 20, 2021. ECF No. [45-1] at 31. On December 20, 2021, Plaintiff returned to work at his post of duty, which was reopened with restrictions. *Id.*; PSMF ¶ 28; OPSMF ¶ 28. The Proposal of Removal

was subsequently removed from Plaintiff's personnel file.[11] PSMF ¶ 28; OPSMF ¶ 28; ECF No.

[46-2] at 57.

In his deposition, Plaintiff testified that he made his first reasonable accommodation

request in 2014. ECF No. [45-1] at 4. Regarding the various leave requests Plaintiff made between

April 2020 and December 2021, Plaintiff testified as follows:

> Q. Okay. And so your understanding or your frame of mind – in the beginning of
> April 2020 is it fair to say that you were at that time, your frame of mind was that
> you were making leave requests?
> [Counsel]: Object to the form of the question. You can answer.
> A. Yes, to my understanding I just made requests, just like you would ask for
> vacation time or sick leave. I was just making requests ….
> Q. And at what time did you let your supervisor know that this was a reasonable
> accommodation request?
> A. Again, they were just requests. So you're stating them as reasonable
> accommodation requests, I don't know that – my understanding of it now is that,
> yes, those would qualify as reasonable accommodation [requests].

*Id.* at 6-7. Plaintiff additionally testified:

> Q. And where there – did you file it – did you fill out this form anytime between
> 2014 and 2022?
> A. I would have filled out the same form in the 2014 reasonable accommodation as
> I did in 2022. I have not filled out that form at anytime in between.
> Q. Is there a reason why?
> A. I didn't have any other reasonable accommodation request to my knowledge at
> the time, so.
> Q. Okay. But you're familiar with the reasonable accommodation policies, correct?
> A. Yes. When requesting a reasonable accommodation, as I understand it, that's
> what you have to do, you can either do it via email, I believe you can do it orally,
> or you can actually file the form.

*Id.* at 7-8.

Tinoco acknowledged that Plaintiff was a qualified individual during his deposition. ECF

No. [46-2] at 3-4. Tinoco also testified that "outside of the ergonomic desk, nothing else was

---

[11] Plaintiff testified that management did not provide its reasoning for rescinding the Proposal of
Removal or for directing Plaintiff to return to work at his post of duty on December 20, 2021. ECF No. [45-
1] at 31.

considered" during the period in controversy. *Id.* at 12. Regarding his understanding of whether

Plaintiff made a reasonable accommodation request, Tinoco testified as follows:

> A. So I was trying to say that, in the beginning, the weather and safety leave he was
> requesting was more because we didn't have telework agreement. After he started
> working from home, that he started to not feel well with his back, that's when the
> reasonable accommodation really started to just kick in, as to him needing to take
> that and use that for his telework.
> Q. So am I correct in saying, that at some point, Mr. Ypsilantis's request for weather
> and safety leave was considered a reasonable accommodation by the Service, is that
> correct?
> A. Yes, yes.

*Id.* at 19-20. Tinoco also testified that no analysis was conducted to confirm if Plaintiff's leave

requests were unduly burdensome on the IRS. *Id.* at 23. Tinoco further testified:

> Q. Okay. Did you ever sit down with Mr. Ypsilantis and have a discussion with him
> and say basically, look, I know that you've told us that the ergonomic desk in your
> home is not going to work. What other reasonable alternatives are there for you,
> Mr. Ypsilantis, that would work in terms of a reasonable accommodation?
>
> A. We didn't have that discussion, and perhaps the reason why is because once he
> started to establish that there's nothing we can do to provide him as far as
> reasonable accommodations that would fit his home, that pretty much ended the
> conversation there. So that's what I recall in these conversations.

*Id.* at 26.[12]

## II. LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-

moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th

Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is

material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*,

---

[12] Mr. Maclennan and Area Director Julie Forester also testified that no alternative accommodations
were considered. ECF No. [46-8] at 12-14; ECF No. [46-9] at 4.

477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

## III. DISCUSSION

The Parties both contend that the undisputed evidence establishes that they are entitled to judgment as a matter of law. Plaintiff argues that the undisputed evidence shows that Defendant violated the Rehabilitation Act by failing to accommodate Plaintiff's reasonable accommodation request, and for harassing and retaliating against Plaintiff due to his continued attempts to obtain a reasonable accommodation. Defendant argues that the undisputed evidence shows that Plaintiff fails to make a *prima facie* case of discrimination or retaliation under the Rehabilitation Act, and Defendant is accordingly entitled to judgment as a matter of law.

### A.  Count I - Disability Discrimination

"Section 504 of the Rehabilitation Act of 1973 prohibits entities receiving federal funds from discriminating against otherwise qualified individuals with disabilities." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (citing *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007). "Discrimination claims under the ADA [American with Disabilities Act] and the Rehabilitation Act are governed by the same standards, and the two claims are generally discussed together." *J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (per curiam). "Cases decided under the Rehabilitation Act" accordingly serve as "precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000). "The burden for establishing causation under the Rehabilitation Act, however, requires proof that the individual was discriminated against 'solely by reason of her disability,' while the ADA requires a lesser showing of 'but' for' causation." *Porterfield v. Social Security Administration*, No. 20-10538, 2021 WL 3856035 at *4 (11th Cir. Aug. 30, 2021) (quoting *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 (11th Cir. 2008)). "To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must

16

show that (1) he has a disability, (2) he is otherwise qualified for the position, and (3) he was subjected to unlawful discrimination as a result of his disability." *Boyle*, 866 F.3d at 1288 (citation omitted).

Under the Rehabilitation Act, a qualified disabled individual can establish a *prima facie* case of discrimination by showing that the employer failed to provide a reasonable accommodation, unless doing so would impose an undue hardship on the employer. *Boyle*, 866 F.3d at 1289. "A disability, for purposes of the Rehabilitation Act, is a physical or mental impairment that substantially limits one or more major life activities." *Id.* at 1288 (citing 29 U.S.C. § 705(9)(B)). "A person with a disability is 'otherwise qualified' if he is able to perform the essential functions of the job in question with or without a reasonable accommodation." *Id.* (citing *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 n.17, 107 S.Ct. 1123, 1131 n.17, 94 L.Ed.2d 307 (1987) ("[T]he issue of whether an employee is an otherwise qualified individual and whether a reasonable accommodation can be made for that employee is determined by reference to a specific position.")).

An employer's duty to provide a reasonable accommodation is triggered when a plaintiff (1) makes a specific demand for an accommodation and (2) demonstrates that the requested accommodation is reasonable. *Frazier-White v. Gee*, 818 F.3d 1249, 1255-1256 (11th Cir. 2016); *see also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999) (an employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."). Once an employer is placed on notice of the employee's disability and request for an accommodation, the employer is obligated to "make a reasonable effort to determine the appropriate accommodation." *Gaston*, 167 F.3d at 1364 (internal quotation marks omitted). "The plaintiff bears the burden of identifying an accommodation and

showing that the accommodation would allow him to perform the essential functions of the job in question." *Boyle*, 866 F.3d at 1289 (citation omitted).

Here, it is undisputed that Plaintiff is a qualified disabled individual under the Rehabilitation Act. PSMF ¶ 2; OPSMF ¶ 2. Plaintiff's status as 90% disabled due to numerous medical conditions constitutes "a physical … impairment that substantially limits one or more major life activities." *Boyle*, 866 at 1288 (citing 29 U.S.C. § 705(9)(B)). Moreover, Plaintiff is otherwise qualified, as he can perform the essential functions of his role as an IRS Agent "with or without a reasonable accommodation." *Id.* (citation omitted). "The only question is thus whether Defendant discriminated against Plaintiff by failing to provide a reasonable accommodation[.]" *Frazier-White*, 818 F.3d at 1255.

To meet its burden, Plaintiff accordingly must first show that (1) he made a specific demand for an accommodation, and (2) that the requested accommodation was reasonable. *Frazier-White*, 818 F.3d at 1255-56. Conversely, to demonstrate that Plaintiff's *prima facie* case fails, Defendant must show that Plaintiff never made a specific demand for an accommodation, that the requested accommodation was unreasonable, or both.

### i.   Whether Plaintiff made a specific accommodation request

Plaintiff contends that he is entitled to judgment on his failure-to-accommodate claim because the undisputed evidence establishes that he is a qualified individual, he made a reasonable accommodation request, and Defendant failed to sufficiently engage in an interactive process to accommodate his reasonable request. Defendant responds that Plaintiff fails to make out a *prima facie* failure-to-accommodate claim because Plaintiff never made a specific demand for an accommodation, and Defendant accordingly owed Plaintiff no duty under the Rehabilitation Act.

Plaintiff specifically points to Tinoco's testimony acknowledging that he understood Plaintiff's various leave requests to be a reasonable accommodation request. ECF No. [46-2] at 19-20. While that testimony may support an inference that Plaintiff made a specific accommodation request, Tinoco's testimony is not a specific accommodation request. Moreover, Plaintiff's observation that his supervisor acknowledged his requests as reasonable accommodation requests—without specifying the accommodation request in question—fails to establish that Defendant owed Plaintiff a duty under the Rehabilitation Act. *See Owens v. State of Ga., Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022). ("[T]o trigger an employer's duty to provide a reasonable accommodation, the employee must … make a specific demand for an accommodation[.]").

Defendant contends that none of Plaintiff's various leave requests during the period in controversy constitute specific accommodation requests. Defendant points to Plaintiff's deposition testimony referring to his leave requests as "just requests" and comparing those requests to "just like … vacation time or sick leave." ECF No. [45-1] at 6-7. Plaintiff also testified that he did not fill out the IRS's Reasonable Accommodation Request, Form 13661 ("Reasonable Accommodation Form") at any time between 2014 and 2022 because he "didn't have any other reasonable accommodation request[s] to my knowledge at the time[.]" *Id.* at 8. Defendant accordingly argues that Plaintiff's failure to complete the Reasonable Accommodation Form during the 2020 period—despite doing so when making accommodation requests in 2014 and 2022—establishes that he failed to make a specific accommodation request.

A review of the record evidence demonstrates that Plaintiff made specific accommodation requests. Plaintiff's initial April 9, 2020 email articulated several reasons for his request for

administrative or Weather & Safety leave.[13] Those reasons include Plaintiff's "previously noted Immune System Compromised position" and "other medical issues (specifically requiring previously approved Reasonable Accommodations) necessitating special equipment[,]" complete with Plaintiff's observation that his "back, neck, and eyes have all started to hurt since working from home." ECF No. [45-6] at 2. Plaintiff's follow-up email on April 10, 2020 also notes his disagreement with Tinoco's "use of the evacuation Order … to oppose the use of identified Reasonable Accommodation issues, Telework issues, Immune System Compromised person issues" to deny Plaintiff's request for Weather & Safety Leave. ECF No. [45-7]. In another follow-up email on May 1, 2020, Plaintiff attached the VA Letter and noted in pertinent part that he was renewing his leave requests "[g]iven the information in the letter … my active Reasonable Accommodation and other issues[.]" ECF No. [45-9]. The VA Letter advised that that "[d]ue to the COVID-19 National Crisis and because of his current medical conditions, and immunocompromised system secondary to the use of DMT therapy, it is advised that the Veteran stays under preventative care at home in an isolated environment." ECF No. [45-10].

Those emails demonstrate that Plaintiff made a specific accommodation request. In all three emails to Plaintiff's supervisors, Plaintiff requested leave due to his inability to telework from home and cited the need for his previously approved reasonable accommodation equipment and his disabilities as justification. ECF Nos. [45-6] at 2, [45-7], [45-9]. Plaintiff further noted that he was seeking medical documentation to support his leave requests in his April 10, 2020 email, ECF No. [45-7], and subsequently attached the VA Letter in support of his renewed leave requests

---

[13] Plaintiff specifically articulated the following bases for his leave request: (1) a history of not teleworking from home; (2) a lack of space to telework from home; (3) the fact that all spaces in his home are shared with his spouse and children; (4) an inability to safely secure equipment and case documents; (5) his immunocompromised status; and (6) his various medical issues and disabilities. ECF No. [45-6] at 1-2.

in his May 1, 2020 email. ECF No. [45-9]. The evidence thus shows that Plaintiff requested a specific accommodation—leave—and supported his request with references to his 2014 Reasonable Accommodation and disabilities. The Eleventh Circuit has indicated that those leave requests satisfy the relatively low burden of identifying a specific accommodation request. *See, e.g.*, *Wilson v. Sec'y of Veterans Affs. Dep't of Veterans Affs.*, No. 20-10799, 2022 WL 1907863, at *6 (11th Cir. June 3, 2022) (the plaintiff's request "to park on-site" complete with information "about mobility limitations and her belief that the accommodation would resolve the issue" constituted a reasonable accommodation request); *Frazier-White* 818 F.3d at 1256 ("[g]enerously construing" the plaintiff's prior communications with the defendant and statements during a due process hearing as proposing a specific accommodation). The fact that Plaintiff requested various forms of leave and cited additional bases for his leave requests does not obscure the fact that in each communication, Plaintiff requested the same specific accommodation: leave in lieu of teleworking from his home.

Moreover, Plaintiff's VA Letter constitutes a specific accommodation request. Defendant asserts that the VA Letter cannot serve as a specific accommodation request. That argument is foreclosed by controlling precedent and otherwise lacks support. In *Owens*, the Eleventh Circuit recently found that the plaintiff's "doctor's recommendation that she telework qualified as a demand for a specific accommodation[.]" 52 F. 4th at 1337. Here, the VA Letter recommends the same accommodation for Plaintiff. The fact that Plaintiff proffered the VA Letter in support of his leave requests does not support a contrary finding. The VA Letter instead supports the finding that Plaintiff's emails constitute a specific accommodation request bolstered by this medical documentation.[14]

---

[14] Those specific accommodation requests are, of course, inconsistent. Defendant provides no authority suggesting that inconsistent specific accommodation requests each negate the other, however.

Defendant argues that Plaintiff's testimony referring to his leave requests as "just requests" akin to vacation time or sick leave demonstrates that Plaintiff failed to make a specific accommodation request. Defendant provides no support for finding that Plaintiff's characterization of his accommodation request is dispositive, however. Concluding that Plaintiff failed to make a specific accommodation request on that basis is particularly inappropriate here considering Tinoco's contrary testimony.[15]

Defendant also contends that Plaintiff's failure to fill out the Reasonable Accommodation Form during this period establishes that Plaintiff did not make a specific accommodation request. That argument lacks support. It is also foreclosed by Defendant's own internal policy providing that "[a] reasonable accommodation request may be submitted orally or in writing, by the employee or applicant or by someone associated with the employee or applicant." ECF No. [46-6] at 10. Here, Plaintiff repeatedly requested leave via email. *See, e.g.*, ECF No. 45-6 at 1-2; ECF No. [45-9] at 1-2. In accordance with the Defendant's internal policy, failing to make requests via the Reasonable Accommodation Form is an insufficient basis to conclude that Plaintiff never made an accommodation request.

The Court accordingly finds that Plaintiff made two specific accommodation requests: a request for leave, as reflected in his April 9, 2020, April 21, 2020, and May 1, 2020 emails; and 2) a request to telework with his pre-approved accommodation equipment and an ergonomic desk. The Court proceeds to determine whether those specific accommodation requests are reasonable.

---

Moreover, this inconsistency is properly analyzed under the reasonableness prong of Plaintiff's failure-to-accommodate claim.

[15] Tinoco testified that he understood Plaintiff's leave requests as constituting a reasonable accommodation request. *See* ECF No. [46-2] at 19-20. Further, Plaintiff's deposition testimony is inconsistent. In addition to his testimony described above, Plaintiff also testified that his understanding "now is that, yes, those would qualify as reasonable accommodation requests[.]" *Id.* at 7.

ii.     **Whether Plaintiff's accommodation requests are reasonable**

The Eleventh Circuit recently clarified the contours of an employer's duty to provide a

reasonable accommodation under the Rehabilitation Act. In *Owens v. State of Ga., Governor's Off.*

*of Student Achievement*, 52 F.4th 1327 (11th Cir. 2022), the court reiterated:

> The Rehabilitation Act does not require employers to speculate about their
> employees' accommodation needs. Instead, we have held that to trigger an
> employer's duty to provide a reasonable accommodation, the employee must (1)
> make a specific demand for an accommodation and (2) demonstrate that such
> accommodation is reasonable.

*Id.* at 1334. "Only after the employee provides this information must the employer 'initiate an

informal, interactive process' with the employee to discuss the employee's specific limitations,

explore potential accommodations, and select the most appropriate accommodation for both the

employer and the employee." *Id.* (citing 29 C.F.R. § 1630.2(o)(3); *D'Onofrio v. Costco Wholesale*

*Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020)).

To demonstrate that the requested accommodation is reasonable, "an employee must do at

least two things: identify her disability and suggest how the accommodation will overcome her

physical or mental limitations." *Id.* "In most cases, to identify a disability, an employee must

provide at least some information about how a physical or mental condition limits her functioning."

*Id.* at 1335. This serves to "put her employer on notice of her disability," and accordingly requires

an employee to "identify—at least in broad strokes—the limitations her mental or physical

condition imposes." *Id.*

"Second … an employee must provide her employer enough information to assess how her

proposed accommodation would help her overcome her disability's limitations." *Id.* "Accordingly,

an employee must link her disability to her requested accommodation by explaining how the

requested accommodation could alleviate the workplace challenges posed by her specific disability." *Id.*

Accordingly, to show a *prima facie* failure-to-accommodate claim, Plaintiff must (1) identify the limitations his disability imposes, and (2) link his disability to the requested accommodation by explaining how it will alleviate the "workplace challenges posed by h[is] specific disability." *Id.* The Court accordingly proceeds to analyze whether either of Plaintiff's specific accommodation requests—leave and telework with additional ergonomic equipment— meet this standard.

Plaintiff contends that his supervisors' acknowledgement that Plaintiff is a qualified disabled individual, characterization of his leave requests as reasonable accommodation requests, and acknowledgement that the interactive process broke down once Plaintiff refused to telework from home entitles Plaintiff to summary judgment. Defendant argues that it is entitled to summary judgment because the undisputed evidence establishes that Plaintiff's accommodation requests were unreasonable.

As a threshold matter, Plaintiff's reliance on his supervisors' deposition testimony, by itself, fails to establish that he made a reasonable accommodation request. Plaintiff correctly observes that his supervisors testified that he is a qualified disabled individual, characterized his leave requests as a request for a reasonable accommodation, and acknowledged that they failed to explore alternative accommodations beyond providing Plaintiff additional equipment to telework from his home. *See* ECF No. [46-2] at 3-4, 12, 19-20, 23, 26; ECF No. [46-8] at 12-14; ECF No. [46-9] at 4. Plaintiff concludes that those admissions entitle him to judgment on his failure-to-accommodate claim as a matter of law. However, before Defendant's duty to engage in *any* interactive accommodation process with Plaintiff is triggered, Plaintiff first must "demonstrate that

such accommodation is reasonable."[16] *Owens*, 52 F.4th at 1334 (citations omitted). Plaintiff provides no support for finding that a supervisor's characterization of a request as a reasonable accommodation request renders it reasonable as a matter of law. As discussed, binding case law provides that Defendant has no duty to accommodate Plaintiff until he makes a showing that his accommodation request is reasonable.

To be reasonable, Plaintiff must identify the disability in question and "suggest how the accommodation will overcome [his] physical or mental limitations." *Id.* at 1335. Plaintiff has identified his disability, and Defendant's acknowledgement of his disability in 2014 further satisfies that requirement. Plaintiff fails to suggest how any of his leave requests "would help [him] overcome [his] disability's limitations[,]" however. *Id.* As discussed, Plaintiff is required to link his disability "to [his] requested accommodation by explaining how the requested accommodation could alleviate the workplace challenges posed by h[is] specific disability." *Id.*

### a. Plaintiff's leave requests

As discussed, Plaintiff made two specific accommodation requests: a request for leave, as reflected in his April 9, 2020, April 21, 2020, and May 1, 2020 emails; and 2) a request to telework with his pre-approved accommodation equipment and an ergonomic desk. The Court finds that Plaintiff's requests for leave in lieu of teleworking from home were unreasonable for two reasons: an absence of any link between those requests and Plaintiff's disabilities, and those indefinite leave requests are unreasonable under controlling law. First, Plaintiff's April 9, 2020, April 21, 2020 and May 1, 2020 emails request leave as an accommodation from teleworking from home, but

---

[16] Plaintiff's observation that the Eleventh Circuit recognized an employer's duty to engage in an interactive process with an employee in *Wilson* is inapposite. Consistent with *Owens*, the court in *Wilson* found that "[t]o trigger the employer's duty to provide a reasonable accommodation, the plaintiff must make a specific demand for such an accommodation … [and the] plaintiff also must meet the burden of establishing that the particular accommodation is reasonable." *Wilson*, 2022 WL 1907862, at *4 (citations and internal quotation marks omitted).

those emails do not explain how the requested accommodation "could alleviate the workplace challenges posed by h[is] specific disability." *Owens*, 52 F.4th at 1327.  As noted above, Plaintiff did cite his need for his approved reasonable accommodation equipment, his immunocompromised status, and that his "back, neck, and eyes have all started to hurt since working from home." ECF No. [45-6] at 2. In Plaintiff's emails and during all subsequent communications, however, Plaintiff failed to articulate how those challenges constitute a "*physical or mental limitation*" caused by his "physical or mental condition." *Id.* (citing 29 C.F.R. § Pt. 1630, App. § 1630.9) (emphasis in original).

Plaintiff instead repeatedly emphasized that teleworking from his home was unworkable due to a lack of space for necessary ergonomic equipment, the presence of his wife and children, and his inability to safely secure sensitive materials. ECF No. [45-6] at 1-2; ECF No. [45-8] at 1; ECF No. [45-9] at 1-2; ECF No. [45-23]. A lack of space for telework and related challenges are not related to Plaintiff's disabilities, however. Plaintiff has failed to demonstrate that his disabilities render teleworking from home unworkable. Simply asserting that "the only accommodation offered by management was completely unworkable for him[]" fails to demonstrate a link between his leave request and his disability. Plaintiff's Motion at 3.

Moreover, Plaintiff's request for indefinite leave is also unreasonable. As Defendant accurately observes, the Eleventh Circuit has repeatedly found that indefinite requests for leave are unreasonable. *See, e.g.*, *Monroe v. Florida Department of Corrections*, 793 Fed. App'x 924, 927 (11th Cir. 2019) ("[T]he ADA covers people who can perform their essential job functions in the present or immediate future, requests for indefinite leave so an employee can work 'at some uncertain point in the future' are inherently unreasonable.") (quoting *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003)); *Frazier-White*, 818 F.3d at 1255-57 (affirming district court's

determination that the plaintiff's request for "an indefinite extension of her light-duty status ... was unreasonable as a matter of law"). As in *Monroe* and *Frazier-White*, Plaintiff's request for indefinite leave so that he "can work 'at some uncertain point in the future'"—here, whenever the COVID-19 pandemic abated—is "inherently unreasonable." *Monroe*, 793 Fed. App'x at 927.

Plaintiff responds by pointing to non-binding authority providing that in certain contexts, a temporary leave of absence can constitute a reasonable accommodation. *See Murphy v. District of Colombia*, 590 F. Supp. 3d 175, 185 ("[I]n certain cases 'a leave of absence may constitute a reasonable accommodation under the ADA.'") (quoting *Hancock v. Wash. Hosp. Ctr.*, 13 F. Supp. 3d 1, 11 (D.D.C. 2014) (additional citation omitted); *see also Schobert v. CSX Transportation, Inc.*, 504 F. Supp.3d 753, 790 ("Plaintiffs allege that they requested FMLA leave to allow them to address an ongoing ailment that plausibly meets the definition of a 'disability,' and that, if they took the time off as planned, they could continue to perform the essential functions of their job. This is the kind of request for FMLA leave that can double as a reasonable accommodation."). Those authorities are unavailing because, as discussed, Plaintiff's indefinite leave request is unreasonable under binding precedent.[17]

The Court accordingly finds that Plaintiff's requests for leave constitute an unreasonable accommodation request because they lack any link to Plaintiff's disabilities.

### b. Plaintiff's telework request

As noted above, the VA Letter advised that Plaintiff should be permitted to telework from his home and recommended additional ergonomic equipment due to Plaintiff's disability. Unlike Plaintiff's leave request, the VA Letter links Plaintiff's disabilities to his accommodation request, namely, teleworking from home with ergonomic equipment. *See* ECF No. [45-10] ("Due to the

---

[17] Further, Plaintiff fails to demonstrate how indefinite leave would permit Plaintiff to alleviate challenges posed by his disabilities and subsequently return to work.

COVID-19 National Crisis and because of his current medical conditions, and immunocompromised system secondary to the use of DMT therapy, it is advised that the Veteran stays under preventative care at home in an isolated environment."). Despite this link, the VA Letter does not show that Plaintiff made a reasonable accommodation request for two reasons.

First, the VA Letter recommends the precise working conditions that Plaintiff sought an accommodation for and later deemed unworkable—telework from his home with additional ergonomic equipment. *Id.* Moreover, the VA Letter was proffered as medical documentation to support Plaintiff's leave requests, not as a request for an accommodation itself. Plaintiff's own communications to Defendant make this clear. Plaintiff's July 20, 2020 email, for instance, notes that "a Reasonable Accommodation Request was made for an ergonomic desk" and explains that Plaintiff "did not make such a request … I do not have any workspace in my home to place any type of ergonomic desk … [or] to place the ergonomic chair … or any of the other adaptive technology items[.]" ECF No. [45-23].[18]

Second, the undisputed evidence demonstrates that Defendant attempted to accommodate Plaintiff based on the VA Letter's recommendation, but Plaintiff repeatedly refused these attempts.[19] Accordingly, even assuming that the VA Letter constitutes a demand for a reasonable

---

[18] *See also* ECF No. [45-8] at 1 ("I am in contact with my doctors to address the current medical issues (related specifically to working from home without specialized equipment) and I will have them provide[] a letter stating the facts of my conditions and *my specific needs for a workspace*[.]") (emphasis added); ECF No. [45-18] at 1 ("I am requesting and need an ergonomic desk … [A]s stated numerous times before, these [ergonomic equipment] items can be brought to my house, but I do not have any space available to place these items and to provide sufficient work space, security and/or storage without impeding my families normal daily activities[.]").

[19] *See, e.g.*, ECF No. [45-13] ("[W]e [Defendant] will continue the reasonable accommodation interactive process by assisting in the delivery of an ergonomic desktop, if medically required at your telework location[.]"); ECF No. [45-14] ("[T]his email serves as confirmation that you declined receipt of the reasonable accommodation equipment[.]"); ECF No. [45-19]; ECF No. [45-21] (Plaintiff explains that he "cannot accept delivery of the Reasonable accommodation items or the future delivery of an Ergonomic desk[.]"); ECF No. [45-23] (noting Plaintiff's refusal to accept delivery of "existing reasonable accommodation equipment[.]").

accommodation in this context, Plaintiff's explicit refusal of the recommended ergonomic equipment is fatal to his failure-to-accommodate claim under controlling precedent. *See D'Onofrio*, 964 F.3d at 1014 ("Under the ADA, an employer will not be liable for failure to accommodate if the employee is responsible for the breakdown of the interactive process.") (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)); *see also Wilson*, 2022 WL 1907863, at *4 ("Only when the employer fails to provide the accommodation after it was demanded can the plaintiff sustain a discrimination claim under the Rehabilitation Act.") (citing *Gaston*, 167 F.3d at 1363-64).

The undisputed evidence establishes that both of Plaintiff's specific accommodation requests were unreasonable, even in spite of Defendant's attempted to accommodate Plaintiff. Plaintiff communicated that telework with ergonomic equipment was an unworkable accommodation, yet "an employer is not required to accommodate an employee in any manner that the employee desires—or even provide that employee's preferred accommodation." *D'Onofrio*, 964 F.3d at 1022. The Court accordingly finds that Defendant is entitled to judgment as a matter of law on Plaintiff's failure-to-accommodate claim.

### B.  Count II - Retaliation

Plaintiff and Defendant both argue that the undisputed evidence entitles them to judgment as a matter of law on Plaintiff's retaliation claim. Plaintiff argues that it is entitled to summary judgment because Defendant's withdrawal of its Proposal of Removal establishes Defendant's liability under the Rehabilitation Act. Plaintiff contends that implicit in the Defendant's withdrawal of the disciplinary sanctions is an admission that Defendant's actions were improvidently taken. Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's retaliation claim because Plaintiff fails to show a *prima facie* retaliation claim. Even if

Plaintiff does so, Defendant contends that it is nevertheless entitled to summary judgment because Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reason for subjecting Plaintiff to any adverse employment action.

"In addition to imposing liability for failing to provide reasonable accommodations, the Rehabilitation Act also prohibits retaliating against an employee for engaging in protected activity." *Owens*, 52 F.4th at 1337 (citing 29 U.S.C.§ 794(a)). The Rehabilitation Act does so by incorporating the ADA's anti-retaliation provision. *See* 29 U.S.C. § 794(a), (d); 42 U.S.C. § 12203(a). The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this [Act]." 42 U.S.C. § 12203(a). As with failure-to-accommodate claims, ADA retaliation claims—and Rehabilitation Act retaliation claims—are analyzed under the same framework as Title VII. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, to establish a *prima facie* retaliation claim under the Rehabilitation Act, Plaintiff "must show: (1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse action; and (3) there was a causal relationship between the action and [his] protected activity." *Wilson*, 2022 WL 1907863, at *7 (citing *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1316 (11th Cir. 2007)).

Plaintiff points to Tinoco's testimony that the Proposal of Removal was removed and Tinoco's promise to remove the Letter of Admonishment and suspension documentation from Plaintiff's personnel file. Plaintiff argues that those actions "do not shield the Agency from liability." Plaintiff's Motion at 10. Plaintiff also relies on non-binding authority observing that "'rescinding a prior employment will not always shield an employer from liability.'" *Kent v. Iowa*, 651 F. Supp. 910, 944 (S.D. Iowa 2009) (quoting *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008)). While not controlling, those decisions simply reject the principle that

an employer can invariably correct an adverse employment action to avoid liability for its discriminatory or retaliatory acts. Here, Defendant does not argue that its withdrawal of its proposed disciplinary actions shields it from liability. Plaintiff has also not shown that—but for Defendant's withdrawal of the Proposal of Removal—it is otherwise liable for retaliation. Applying controlling authority, that argument lacks force where, as here, there is no predicate finding of liability.[20] To establish Defendant's liability, Plaintiff instead must first show a *prima facie* case of retaliation and Plaintiff has failed to do so.

The Court's determination that Plaintiff failed to make a reasonable accommodation request is fatal to Plaintiff's retaliation claim. As noted, the first element of a *prima facie* retaliation claim requires Plaintiff to show that he "engaged in a statutorily protected activity[.]" *Wilson*, 2022 WL 1907863, at *7 (citation omitted). Plaintiff made two specific accommodation requests, but as discussed, neither request constitutes a reasonable accommodation request. Even assuming Plaintiff's AWOL designation, suspension, and Proposal of Removal qualify as adverse employment actions,[21] Plaintiff has failed to establish any casual connection between those adverse employment actions and any statutorily protected activity. Plaintiff is accordingly not entitled to summary judgment on his retaliation claim as he fails to make out a *prima facie* case of retaliation.

---

[20] *See Crawford v. Carroll*, 529 F.3d 961, 972 (11th Cir. 2008) ("Following the Seventh Circuit's lead, we too decline to hold as a matter of law that a retroactive pay raise can 'undo' the harm caused by a discriminatory or retaliatory act because such a decision could permit employers to elude liability for conduct that otherwise is actionable. We therefore find that the district court erred when it held that Crawford's poor performance evaluation, which made her ineligible for a merit pay increase in October 2002, did not constitute an adverse employment action for purposes of her discrimination claims.").

[21] Plaintiff does not argue that any of those actions constitute adverse employment actions. Given Plaintiff's failure to do so, the Court does not determine whether these employment actions sufficiently "alter[] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect[] his or her status as an employee." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000)).

Defendant in turn argues that it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff fails to show a *prima facie* retaliation claim, and even if the Court disagrees, that Plaintiff has failed to show that Defendant's proffered justifications are pretextual. As discussed above, the Court finds that Plaintiff failed to make a reasonable accommodation request. The Court's review of the record fails to reveal any other statutorily protected activity on which Plaintiff could rely for his *prima facie* retaliation claim, and Plaintiff does not suggest any. Moreover, even were Plaintiff able to set forth a *prima facie* retaliation claim, the undisputed evidence establishes that Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reasons for subjecting him to discipline.

"Where, as here, a plaintiff claims discrimination or retaliation based on circumstantial evidence, we ordinarily apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* at 1337-38 (citing *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)).[22] "Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case. If the plaintiff satisfies this burden, the burden of production then shifts to her employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer proffers even one such reason, the burden then shifts back to the plaintiff, who must show that the reason given by the employer was a mere pretext for discrimination." *Id.* at 1338 (citations omitted). "Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).

---

[22] Plaintiff does not alternatively argue that the circumstantial evidence forms "a convincing mosaic" of circumstantial evidence that "raises a reasonable inference that the employer discriminated" against her. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The Court's review of the undisputed evidence confirms that there is no basis for such an inference.

Assuming that Plaintiff could show that he requested a reasonable accommodation and subsequently suffered an adverse employment action, Plaintiff's *prima facie* retaliation claim is as follows: (1) Plaintiff engaged in a statutorily protected activity by requesting a reasonable accommodation, namely, additional leave; (2) Plaintiff suffered an adverse employment action when Defendant placed him on AWOL status, proposed that Plaintiff be suspended , and proposed that Plaintiff be terminated; (3) Plaintiff was subjected to those actions because Defendant refused to accommodate his leave requests.

Defendant next has the burden to articulate a legitimate, non-discriminatory reason for its actions. To meet this burden, Defendant proffers Plaintiff's failure to report to telework for 18 months as its legitimate, non-discriminatory reason for subjecting Plaintiff to discipline. Defendant additionally notes that the decisions to designate Plaintiff as AWOL, to suspend Plaintiff, and to propose Plaintiff for removal were made after Plaintiff refused Defendant's attempts to provide his previously approved ergonomic equipment while refusing to report to telework.

The burden then shifts back to Plaintiff to show that Defendant's legitimate, non-discriminatory reason for those actions was pretextual. To establish pretext and avoid summary judgment, the plaintiff "must present 'significant probative evidence[.]'" *Owens*, 52 F.4th at 1338 (quoting *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)). This evidence must be "sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action[.]" *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)). To do so, the evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure*

*Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Here, Plaintiff fails to proffer any evidence, probative or otherwise, permitting a reasonable factfinder "to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action[.]" *Sims*, 704 F.3d at 1332 (citation omitted). The Court's review of the undisputed evidence fails to reveal any basis for finding that Defendant's proffered reason for subjecting Plaintiff to discipline—refusing to telework for 18 months as well as Defendant's attempts to alleviate Plaintiff's telework concerns—is pretextual. Instead, the record shows that Defendant genuinely attempted to resolve Plaintiff's concerns, only placing him on AWOL status after a lengthy period of refusing to work, and after Plaintiff made clear he would not telework from his home under any circumstances. Accordingly, even if Plaintiff could make out a *prima facie* case, Defendant is nonetheless entitled to judgment as a matter of law on Plaintiff's retaliation claim.

### C.  Count III - Hostile Work Environment

Plaintiff's third claim contends that Defendant created a hostile work environment by harassing Plaintiff through its denials of Plaintiff's leave requests, and by subjecting Plaintiff to discipline. As with his retaliation claim, Plaintiff points to Defendant's rescission of the Proposal of Removal as establishing Defendant's liability for creating a hostile work environment.

"To establish a *prima facie* case of a hostile work environment, an employee must prove he belongs to a protected group; he has been subject to unwelcome harassment; the harassment was based on a protected ground; the harassment was severe or pervasive enough to alter the terms and conditions of his employment; and his employer is responsible for the harassment under a

theory of vicarious or direct liability." *Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Plaintiff fails to show that the undisputed evidence entitles him to judgment as a matter of law on his hostile work environment claim. As with Plaintiff's retaliation claim, Plaintiff assumes that the undisputed evidence establishes Defendant's liability without showing that Defendant's denials of Plaintiff's leave requests and disciplinary proposals constitute an actionable hostile work environment claim. Aside from pointing to Defendant's withdrawal of the Proposal of Removal, Plaintiff otherwise rests on his allegations that Defendant's decisions to (1) deny Plaintiff's requests to return to the workplace; (2) failure to promote Plaintiff; (3) denials of additional leave; (4) designation of Plaintiff as AWOL; and (5) proposed suspension, Letter of Admonishment, and Proposal of Removal created a hostile work environment. *See* ECF No. [14] ¶ 80.

Plaintiff's conclusory allegations fail to satisfy his burden to establish a *prima facie* case of a hostile work environment. The undisputed evidence establishes that Plaintiff is a disabled individual that Defendant proposed be subjected to discipline. Plaintiff fails to show that the evidence constitutes unwelcome harassment, the harassment was based on a protected ground, or any such harassment was severe or pervasive enough to alter the terms or conditions of Plaintiff's employment. Simply pointing to Defendant's subsequent decision to rescind its Proposal of Removal is insufficient absent a showing that any those predicate acts occurred. Plaintiff has accordingly failed to meet its burden that he is entitled to summary judgment on his hostile work environment claim.

Defendant has also failed to meet its burden to show that the undisputed evidence entitles it to judgment on Plaintiff's hostile work environment claim. Defendant's Motion does not address this claim at all, much less show that the undisputed evidence entitles Defendant to summary

judgment. Defendant appears to have responded to Plaintiff's initial Complaint rather than Plaintiff's Amended Complaint.[23] The Court notes that Plaintiff improperly filed his Amended Complaint over two months after filing his initial Complaint without first obtaining leave to do so. *See* Fed. R. Civ. P. 15(a). Any argument that Plaintiff's initial Complaint remained the operative pleading is foreclosed by Defendant's Answer to the Amended Complaint, however. *See* ECF No. [12]. Accordingly, although the undisputed evidence fails to show that Plaintiff is entitled to summary judgment on his hostile work environment claim, Defendant has also failed to meet its burden on this claim.

In sum, Plaintiff has failed to show that it is entitled to summary judgment on any of his claims. Defendant has shown that it is entitled to summary judgment with respect to Plaintiff's failure-to-accommodate and retaliation claims, but not with respect to Plaintiff's hostile work environment claim.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment, **ECF No. [41]**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. [44]**, is **GRANTED in part and DENIED in part**.

3. Plaintiff's claim under Count III shall proceed against Defendant.

---

[23] *See, e.g.*, Defendant's Motion ¶ 2 ("Plaintiff's Complaint asserts purported violations of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., for failure to reasonably accommodate a disability (Court 1) and retaliation (Court 2). *See generally*, D.E. 1.").

Case No. 22-cv-61514-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 13, 2023.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record